J-S75001-19

2020 PA Super 156

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| :--- | :--- | :--- |
| | : | OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER ALLEN STEELE | : | |
| | : | |
| Appellant | : | No. 23 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 18, 2018
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0001105-2018

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:                    **FILED JULY 06, 2020**

Appellant, Christopher Allen Steele, appeals from his aggregate judgment of sentence of 66—180 months' imprisonment for, *inter alia*, aggravated assault, reckless endangerment, possession of an instrument of crime, and criminal use of a communication facility.[1]  Appellant contends that the evidence was insufficient to sustain these convictions.  We hold that the evidence was sufficient to sustain Appellant's convictions for aggravated assault, reckless endangerment, and possession of an instrument of crime. The evidence was insufficient, however, to sustain Appellant's conviction for criminal use of a communication facility.  Accordingly, we reverse Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and (4), 2705, 907(b), and 7512(a), respectively.

conviction for criminal use of a communication facility and remand for resentencing on all remaining convictions.

The record reflects that on March 27, 2018, Appellant drove his truck from his place of business to 23rd and Brandes Streets in Erie, Pennsylvania. Lydia Vicario, Appellant's close friend and employee,[2] accompanied Appellant as a passenger in his truck. Appellant exited the truck at 23rd and Brandes and approached a red Nissan Sentra, while Vicario remained seated in the truck. Several minutes later, Appellant returned to the truck and stated angrily that he had been robbed while selling drugs to the Sentra's occupants. N.T., 10/16/18, at 36-41, 62.

The Sentra drove away, and Appellant sped after it. As Appellant's truck drew closer, he began shooting at the Sentra with a firearm from the driver's side window. *Id.* at 41-46. Prior to trial, Vicario told police that "she had been shot at," and that Appellant had "fir[ed] back to protect her." *Id.* at 20. During trial, however, the Commonwealth asked Vicario whether anyone shot at her. Vicario answered, "That day I did believe that there was something else that happened, but I feel like there was just so much commotion, I don't believe nobody else was shooting." *Id.* at 48. Vicario added that she was not close enough to the Sentra to see if any weapons were inside that vehicle. *Id.* The trial court asked, "Let me be clear. You're chasing the other vehicle,

_____

[2] Appellant ran an establishment called Little Italy's Trading Post. N.T. 10/17/18, at 72.

- 2 -

though. It's not chasing your vehicle, right?" *Id.* Vicario answered, "Yeah." *Id.*

Several blocks after shooting at the Sentra, Appellant rammed into it with his truck. The Sentra lost control and crashed into a car (or cars) parked on the street. A Mitsubishi Mirage was destroyed, and a Dodge Neon suffered damage.[3] *Id.* at 24-25, 41-46, 72-75.

Appellant drove away from the crash scene. According to Vicario, Appellant drove away from the scene of the collision and asked her to drive. At some point after asking her to drive, Appellant turned on a police scanner app on his iphone in an attempt to avoid detection by the police. *Id.* At 59-61.

Neither Appellant nor Vicario called 911. N.T. 10/17/18, at 119. Forty-five minutes after the crash, Sergeant Onderko of the Erie Police stopped Appellant's truck. As the sergeant placed Appellant in handcuffs, he heard his own voice coming out of Appellant's pocket. He removed an iphone from Appellant's pocket and saw the main screen running a police scanner into Erie police agencies. *Id.* at 41-50.

Sergeant Onderko found a .22 caliber Smith & Wesson M&P model firearm partially underneath the passenger seat whose barrel was still warm

---

[3] The trial transcript is not clear whether the Sentra itself struck the Mirage, the Neon, or both vehicles. What is clear, however, is that the Sentra, Mirage and Neon all suffered damage after Appellant's truck knocked the Sentra out of control.

and whose magazine was empty, indicating that all bullets in the magazine had been fired. Sergeant Onderko testified that, based on his experience, he knew that firearm barrels remain warm after being used repeatedly. He also found shell casings, ammunition cartridges and nine baggies of marijuana elsewhere in the passenger compartment. The police discovered gunshot residue on Appellant's person but did not find any weapons in the Sentra or any gunshot residue on the Sentra's occupants. *Id.* at 11, 21, 28-35, 44-45, 53-60.

Appellant testified in his own defense. He claimed that someone in the Sentra robbed him at 23rd and Brandes Streets, but as he left that location in his truck, he came upon a second, independent robbery occurring nearby. The participants in the second robbery decided to terminate that robbery and chase him at high speed in a silver minivan. The Sentra blocked Appellant's escape from the silver minivan, so Appellant shot at the Sentra to get it out of his way, either by shooting out its tires or shooting its occupants. *Id.* at 72-103.

The jury found Appellant guilty of two counts of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) and (a)(4), two counts of reckless endangerment, possession of an instrument of crime, criminal use of a communication facility, possession of drug paraphernalia, propulsion of a missile onto a roadway and possession of a controlled substance. On December 18, 2018, the trial court imposed consecutive sentences of imprisonment of 54-120 months for aggravated assault, 6-36 months for

criminal use of communication facility and 6-24 months propulsion of a missile onto a roadway.[4]  Appellant filed a motion for reconsideration of sentence, then a notice of appeal while his motion for reconsideration was pending, and then a *pro se* petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  Ultimately, the trial court denied the Appellant's motion for reconsideration and PCRA motion and granted Appellant leave to appeal *nunc pro tunc*.  Both Appellant and the trial court complied with Pa.R.A.P. 1925. The trial court filed an opinion stating that Appellant's claim of insufficient evidence was "boilerplate" and devoid of merit.  Trial Ct. Op., 4/11/19, at 3.

On May 7, 2019, this Court dismissed this appeal due to Appellant's failure to file his brief.  On July 19, 2019, Appellant filed a motion to reinstate the appeal.  On August 2, 2019, this Court reinstated this appeal, and both parties have now filed briefs.

Appellant raises two issues in this appeal:

1. Was there insufficient evidence to convict [Appellant] of two counts of aggravated assault in violation of 18 Pa.C.S.A. § [2702(a)(1)] and [(a)(4)], and two counts of recklessly endangering another person in violation of 18 Pa.C.S.A. § 2705?

2. Was there insufficient evidence to convict [Appellant] of possessing an instrument of a crime in violation of 18 Pa.C.S.A. § 907(b) and criminal use of a communication facility in violation of 18 Pa.C.S.A. § 7512(a)?

---

[4] The court imposed a concurrent sentence of imprisonment for possession of an instrument of crime.  With regard to Appellant's remaining convictions, the court either imposed no further sentence or ruled that they merged for sentencing purposes.

Appellant's Brief at 4.

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994, 1001 (Pa. Super. 2015).

A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) when he "attempts to cause serious bodily injury to another . . . under circumstances manifesting extreme indifference to the value of human life." A person is guilty of aggravated assault under Section 2702(a)(4) when he "attempts to cause . . . bodily injury to another with a deadly weapon."

The Crimes Code defines bodily injury as "impairment of physical condition or substantial pain," 18 Pa.C.S.A. § 2301, and serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.***

"For aggravated assault purposes, an attempt is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (internal quotations omitted). Under the plain language of Sections 2702(a)(1) and (a)(4), the Commonwealth need only show that the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred. ***Commonwealth v. Galindes***, 786 A.2d 1004, 1012 (Pa. Super. 2001) ("[e]ven though [the intended victim] was not struck by any bullets, the act of firing a gun toward him constitutes an attempt to cause serious bodily injury" and thus was sufficient to prove aggravated assault).

The Crimes Code defines a "deadly weapon" as "any firearm, whether loaded or unloaded, or . . . any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301. Although a properly used automobile may not be inherently dangerous, it may become a deadly weapon by being used in a manner calculated or likely to produce death

or bodily injury. "Motor vehicles still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today." *Commonwealth v. Scales*, 648 A.2d 1205, 1209 (Pa. Super. 1994); *see also Commonwealth v. Battiato*, 619 A.2d 359, 362 (1993), *abrogated on other grounds*, 781 A.2d 1136 (Pa. 2001) (upholding conviction under Section 2702(a)(4) where appellant struck victim and car in which victim was occupant).

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011). The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by the other person. 18 Pa.C.S.A. § 505(a). A self-defense claim thus entails three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) the defendant was free from fault in provoking the difficulty which culminated in his use of deadly force; and (3) the defendant did not violate any duty to retreat. *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012).

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to sustain Appellant's convictions for aggravated assault under

Section 2702(a)(1).  The evidence demonstrates that after a drug sale to the Sentra's occupants went awry, Appellant became angry and chased the Sentra at high speed while firing his entire magazine of bullets at its occupants. Several blocks later, Appellant smashed his truck into the Sentra, causing a collision between the Sentra and two other vehicles and destroying one of the other vehicles.  Although there was no evidence that the Sentra's occupants incurred injury, Appellant's acts of firing his weapon repeatedly and crashing his truck into the Sentra demonstrated an "attempt[] to cause serious bodily injury to another . . . under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S.A. § 2702(a)(1).  **Galindes**, 786 A.2d at 1012; **Battiato**, 619 A.2d at 362.

The same evidence was sufficient to sustain Appellant's conviction under Section 2702(a)(4), because he attempted to cause bodily injury to the Sentra's occupants with two deadly weapons, his firearm and his truck.  The firearm is a deadly weapon under Section 2301.  The truck is a deadly weapon because Appellant drove it into the Sentra violently enough to cause a serious collision involving two other vehicles, an act calculated to cause death or serious bodily injury to the Sentra's occupants.

The evidence also was sufficient to disprove Appellant's claim of self-defense.  Appellant testified that he was robbed by the Sentra's occupants, and as he drove away, a second group of robbers began chasing him in a silver minivan.  Appellant claimed that he had to shoot at the Sentra because it was

blocking his escape route from the minivan. The Commonwealth countered Appellant's testimony with the testimony of Vicario, a passenger in Appellant's truck and an eyewitness to the events. Vicario testified that Appellant chased after the Sentra at high speed, fired at the Sentra with his firearm and rammed his truck into the Sentra several blocks later. Vicario made no mention at all of a second robbery, a silver minivan chasing after Appellant's truck, or of any need to escape the minivan by shooting at the Sentra. The jury was free to believe, and clearly did believe, Vicario's version of the events instead of Appellant's which it obviously found to be not credible. Accepting her version of the events as true, we hold that the evidence does not support Appellant's claim of self-defense. Appellant was the instigator of the attack on the Sentra's occupants, not a victim entitled to use deadly force to protect himself.

The same evidence was sufficient to sustain Appellant's conviction for reckless endangerment under 18 Pa.C.S.A. § 2705, which requires the Commonwealth to prove that the defendant "recklessly engage[d] in conduct which place[d] or may [have] place[d] another person in danger of death or serious bodily injury." *Id.* Once again, the evidence shows that Appellant became angry after the drug sale went awry, chased after the Sentra at high speed, shot repeatedly at the Sentra with his firearm, and crashed his truck into the Sentra, causing collisions with other vehicles. This was reckless conduct that placed the Sentra's occupants in danger of death or serious bodily injury. *Commonwealth v. Hartzell*, 988 A.2d 141, 143-44 (Pa. Super.

2009) (evidence demonstrated reckless endangerment where from distance of approximately thirty yards, defendant fired his gun into creek near bridge, approximately twenty-five to thirty feet away from victims on bridge while cursing at them); ***Commonwealth v. Picchianti***, 600 A.2d 597, 600 (Pa. Super. 1992) (evidence that defendant drove at high speed, forced several vehicles off roadway and refused to stop for police road blocks was sufficient to demonstrate reckless endangerment).

The evidence also was sufficient to sustain Appellant's conviction for possession of an instrument of crime under 18 Pa.C.S.A. § 907(b), which occurs when the defendant "possesses a firearm . . . with intent to employ it criminally." 18 Pa.C.S.A. § 907(b). Angered by the outcome of the drug transaction, Appellant chased the Sentra at high speed down city streets and then shot at the Sentra's occupants repeatedly with his firearm. Although Appellant testified that he has a license to carry a firearm, this did not entitle him to use his firearm for criminal purposes.

Finally, Appellant argues that the evidence was insufficient to sustain his conviction for criminal use of a communication facility under 18 Pa.C.S.A. § 7512. We agree.

The Crimes Code defines this offense as "us[ing] a communication facility[5] to commit, cause or facilitate the **commission or the attempt thereof of any crime which constitutes a felony under this title or under . . . the Controlled Substance, Drug, Device and Cosmetic Act**[6]." 18 Pa.C.S.A. § 7512(a) (emphasis added). The bolded language, which we will call the "felony element," does not require that the defendant be charged with the underlying felony, but it does require evidence of conduct that a communication facility be used to complete or attempt a felony.

The Commonwealth does not argue that Appellant used the scanner to commit aggravated assault against the Sentra's occupants. Nor would this argument have been successful, since the evidence shows that Appellant did not turn on the scanner until **after** driving away from the location of the collision with the Sentra. Instead, the Commonwealth argued during trial that Appellant used the police scanner to evade the police. Similarly, the court instructed the jury that it could find Appellant guilty under Section 7512 if Appellant "us[ed] that cell phone to try to evade the police . . ." N.T.

_____

[5] A communication facility is "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." 18 Pa.C.S.A. § 7512(c). Appellant does not dispute that a police scanner is a communication facility.

[6] 35 P.S. §§ 780-101 through 780-144.

10/18/18, at 77. The felony element, however, requires more. The evidence must show that evading police with a scanner was done to cause or facilitate the commission or the attempt of a felony—but the Commonwealth fails to identify any such felony. Since the evidence did not satisfy the felony element of Section 7512, we conclude that the evidence was insufficient to sustain Appellant's conviction under this statute.

Because reversal of this conviction upsets the trial court's sentencing scheme, we will vacate all of Appellant's sentences and remand for resentencing on all convictions to give the trial court the opportunity to restructure its sentencing scheme. ***Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283–84 (Pa. 1986); ***Commonwealth v. Williams***, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

Judgments of sentence on all convictions except for criminal use of communication facility affirmed. Judgment of sentence for criminal use of communication facility reversed. Case remanded for resentencing on all convictions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/6/2020