J-S08032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YEURY LORENZO-MERCEDES | : | |
| | : | |
| Appellant | : | No. 1057 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 17, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005570-2016

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED APRIL 15, 2021**

Appellant, Yeury Lorenzo-Mercedes, appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County after a jury found him guilty of aggravated assault.[1]  Sentenced to three to ten years' imprisonment, he contends the evidence neither disproved that he acted in self-defense during his conflict with the alleged victim nor proved that he caused or intended to cause serious bodily injury.  After careful review, we affirm.

The following evidence was adduced at trial: Sebastian Roman, the victim in this case, testified that he met Appellant in 2013 and eventually formed a disagreement with Appellant's friend "Jordy," after Jordy's ex-

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

girlfriend began to date Mr. Roman. N.T., 6/10/19, at 52-54. About one week prior to the evening in question, Mr. Roman was a patron at Sawyers bar in Harrisburg when Jordy spotted him, antagonized him, and spit in his face while talking too close. Roman pushed Jordy back, but nothing further materialized between the men that evening. N.T. at 54-55.

One week later, on August 6, 2016, Roman again went to Sawyers, where he consumed two or three beers by approximately 2:00 a.m., at which time he noticed Jordy in the bar. As Roman was leaving, he saw Appellant standing on Locust Street wearing a light-colored shirt. N.T. at 56. Appellant motioned to Roman to come over.

As Roman approached, someone from behind hit him sharply in the back of his head, knocking off his eyeglasses. He testified that without his glasses he could see only colors and outlines of shapes. As he searched for his glasses, he estimated three or four other people surrounded him in the alley and started to hit him, including Appellant, whom Roman recognized from the color of his shirt. N.T. at 56-58.

Appellant punched and kicked Mr. Roman multiple times. N.T. 59, 81. When asked if he ever struck Appellant, Roman answered that he managed to hit Appellant only once in his attempt to defend himself. Roman recalled eventually collapsing and, after that, being put on a stretcher and taken to the hospital in an ambulance. N.T. at 59.

Officer Daril Foose of the Harrisburg City Police Department was the van driver for the patrol platoon that evening and was dispatched to a fight on

Locust Street at approximately 2:00 a.m. on August 6, 2016. N.T. at 83-84. Initially, she received a follow-up radio report that the fight had dispersed, but as her van was stopped at a red light at Second and Locust Streets, she noticed the assault in question unfolding to her right. N.T. at 87-89.

Officer Foose testified that there were four or five individuals near Roman. N.T. at 89. A man, whom she identified as Appellant, walked towards Roman and, after a brief exchange of words, punched him hard in the face. *Id*. Officer Foose radioed that there was a fight, and she exited the van. N.T. at 90. She witnessed Appellant strike Roman again with a closed fist punch causing him to drop to the ground. *Id*. According to Officer Foose, Roman did not have his hands up when Appellant landed the blows. N.T. at 96.

As Roman lay motionless, Appellant kicked him in the head at least three times. Officer Foose described Appellant's method of kicking as "curb-stomping," whereby Appellant raised his leg and "aggressively" stomped down at a high rate of speed upon Roman's head. N.T. at 90-91. As the officer raced toward Appellant to intervene, she could see Roman was entirely unable to defend himself and bleeding profusely; she expounded there was "a ton of blood" that one would expect to find at a "homicide scene." N.T. at 91. Appellant was still stomping Roman when Officer Foose tackled him into a garbage can. N.T. at 91-92.

Officer John Rosinski of the Harrisburg City Police Department, the primary investigator for this case, testified that he was dispatched on August 6, 2016, at approximately 2:00 a.m. to an altercation happening on Locust

Street. N.T. at 103. The dispatch followed a 911 call, where the caller reported there was someone lying on the ground. When Officer Rosinski first arrived near the designated area on Locust Street, directly behind Officer Foose's van, he did not see anything happening.

While he was sitting in traffic, he heard Officer Foose address him by his nickname, stating, "Riz, Riz, to the right, to the right." N.T. at 106. He witnessed her jump from the van and, upon looking to his right, observed the assault in progress. Specifically, Officer Rosinski testified that he saw Appellant holding onto a railing while forcefully kicking Roman, who was not moving. *Id*. Appellant continued kicking Roman until Officer Foose tackled him. N.T. at 107. Officer Rosinski confirmed observing the large amount of blood all over the ground and on Roman, whom Officer Rosinski believed was dead. N.T. at 108. He noted Appellant, in contrast, appeared to have no injuries except for a slight bruise on his lip. N.T. at 110.

Johanna Lorenzo, Appellant's cousin, testified for the defense and stated she was out with Appellant, his brothers, other cousins, and friends, including Jordy, on the evening of August 6, 2016, to celebrate the birthday of Appellant's stepmother at the downtown club, "Level 2." Shortly after 2:00 a.m., she had just left the club and was walking to her car when she witnessed approximately seven people jump Appellant, some of whom were throwing punches. N.T., 6/11/19, at 128-129. Appellant was punching in return, she testified, in an effort to defend himself against this group. N.T. at 131. She

ran back inside the club for help, but when she returned police were at the scene.

On cross-examination, Ms. Lorenzo explained that she did not call for emergency assistance when she witnessed her cousin being beaten by seven men because she had no phone on her, nor did she ask if anyone else could call for help because she became too scared. N.T. at 133-34. She admitted that she never contacted the police or the District Attorney's office in the ensuing three years to report Appellant's strictly defensive role in the fight. N.T. at 136-37.

Fabiola Colon, Appellant's girlfriend at the time in question, also testified for the defense. According to Ms. Colon, she and a friend were stopped at a red light on Second Street that evening when she saw Appellant walking backwards from five or six men who were converging upon him. N.T. at 139. Concerned that the men were ready to "jump" Appellant, Ms. Colon got out of her car, but she turned back when one of the men warned her that if she interfered, she would get hurt. N.T. at 142, 146. She claimed the group of men started to attack Appellant, kicking and punching him everywhere as he lay on the ground. N.T. at 141. As Appellant was getting up off the ground, Ms. Colon noticed another man confront him and initiate a fight, which she was able to observe until the two men went around the corner. N.T. at 137-141.

On cross-examination, Ms. Colon explained that she did not call 9-1-1 in an attempt to assist Appellant because she lost her cellphone that evening.

She, too, acknowledged that never in the three years between the time charges were filed and trial was commenced did she approach authorities with her exculpatory eyewitness account. N.T. at 146-149.

Ms. Colon's testimony was further rebutted by the testimony of Officer Abigail Roberts of the Harrisburg Police Department, who interviewed Ms. Colon at the fight scene that same early morning. According to Officer Roberts, Ms. Colon reported only that she had attempted to make Appellant stop fighting, and she never alleged Appellant had been attacked by a group of men. N.T. at 159-160, 164.

Mr. Roman testified as to his numerous injuries which required stitches in the left side of his head, nose, inside his lips, his ear lobe, and the top of his ear. He also suffered brush burns on the left side of his head, arms, and hands. N.T., 6/10/21, at 60, 64. His driver's license photo, which was taken twelve days after his injuries on August 18, 2016, was admitted at trial to show that the stitches were still on his nose at that time. N.T. at 63.

Roman claimed that his injuries affected his life in many ways. He could not sleep on the injured side of his head for months, and his ear was still sensitive to the cold and wind. His eye was closed for a couple of weeks due to a blood clot, the occurrence of which negatively affected his vision for nearly one year afterward. Pain from the hairline fracture in his jaw prevented him from eating solid food for weeks and has continued to occur whenever he bites down hard. His broken nose caused long-term breathing issues requiring a future surgery, and the hematoma on his head has caused chronic problems

with balance, equilibrium, lightheadedness, dizziness, and sensitivity to light. Roman explained that he had to participate in physical therapy four days a week for four months. N.T. at 63-71.

After closing arguments, the trial court instructed the jury, in relevant part, that in order to find that the Appellant attempted to cause serious bodily injury, it first must find he engaged in conduct that constituted a substantial step towards causing serious bodily injury to Mr. Roman; and second, that the Appellant's conduct in this regard was intentional. In other words, it was his conscious object or purpose to cause such serious bodily injury. N.T. at 187. The court further instructed that if the jury finds that the intervention of a third party to stop the attack prevented serious bodily injury from occurring, it may consider this as evidence as to whether Appellant's substantial step was done with the intent necessary to support a verdict of guilty. N.T. at 188.

The jury returned a verdict of guilty on the single count of aggravated assault. In accordance with both this conviction and his prior guilty pleas to the remaining counts of possession of a controlled substance, unlawful possession of drug paraphernalia, and public drunkenness, the court sentenced Appellant to three to ten years in prison. Appellant filed post-sentence motions, which were denied, and he filed no direct appeal.

Subsequently, Appellant filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, alleging trial counsel failed to file a requested direct appeal on his behalf. Following a hearing on June

16, 2020, the court reinstated Appellant's direct appeal rights *nunc pro tunc*. This counseled direct appeal followed.

Appellant presents the following questions for our consideration:

1. Was the evidence insufficient for the Commonwealth to establish beyond a reasonable doubt that the Appellant was not acting in self-defense during the alleged attack?

2. Was the evidence insufficient to show that the Appellant caused or intended to cause serious bodily injury to the alleged victim, as required to convict him of aggravated assault?

Appellant's brief, at 7.

Appellant's issues challenge the sufficiency of the evidence to sustain his convictions.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence.

*Commonwealth v. Emler*, 903 A.2d 1273, 1276 (Pa. Super. 2006) (citation omitted).

> A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) when he "attempts to cause serious bodily injury to another ... under circumstances manifesting extreme indifference to the value of human life."

The Crimes Code defines bodily injury as "impairment of physical condition or substantial pain," 18 Pa.C.S.A. § 2301, and serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

"For aggravated assault purposes, an attempt is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." ***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (internal quotations omitted). Under the plain language of Sections 2702(a)(1), the Commonwealth need only show that the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred. ***Commonwealth v. Galindes***, 786 A.2d 1004, 1012 (Pa. Super. 2001).

. . .

"If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Houser***, 610 Pa. 264, 18 A.3d 1128, 1135 (2011). The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by the other person. 18 Pa.C.S.A. § 505(a). A self-defense claim thus entails three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) the defendant was free from fault in provoking the difficulty which culminated in his use of deadly force; and (3) the defendant did not violate any duty to retreat. ***Commonwealth v. Mouzon***, 617 Pa. 527, 53 A.3d 738, 740 (2012).

***Commonwealth v. Steele***, 234 A.3d 840, 846 (Pa. Super. 2020).

Appellant first argues that the evidence was insufficient to sustain his conviction because the Commonwealth failed to disprove, beyond a reasonable doubt, that Appellant acted in self-defense. Specifically, he points

to Roman's own testimony that other persons initiated the physical assault against Roman by punching him in the back of the head and attacking him as a group, and that it was Roman who responded with force directed against Appellant.

The Commonwealth counters that Appellant was one of three or four men who effectuated a planned group attack that instantly overwhelmed Roman, and he eventually acted alone in brutally knocking out Roman and kicking him in the head as he lay incapacitated. The evidence, the Commonwealth maintains, demonstrates that Appellant was never justified to use such force, as he provoked the violence and had no reason to believe Roman placed him in danger of incurring serious bodily injury.

As discussed, Appellant raised a self-defense defense through testimonies claiming he was the victim of Roman's aggressions. The Commonwealth set out to disprove this defense beyond a reasonable doubt mainly through the respective testimonies of Roman and Officer Foose.

According to Mr. Roman, he was the victim of an ambush-style attack from behind as he was walking toward Appellant, who had summoned him as if wanting to discuss something. He described how the initial blow to the back of his head knocked his glasses off, leaving him unable to see anything other than shapes and colors and incapable of defending himself. While he managed to land a single punch against Appellant in his early defensive efforts, he was quickly overtaken by Appellant and his cohorts.

Officer Foose testified that when she and Officer Rosinski arrived, she witnessed Appellant, on his own, engaging a beaten and defenseless Mr. Roman, who stood motionless with his hands by his side. She observed Appellant deliver two uncontested punches to Roman's face that dropped him to the ground, and she ran to Roman's aid as Appellant commenced curb stomping his victim's head. Only her running tackle of Appellant abated the brutal attack.

Such evidence, reasonably accepted as true by the jury acting within its province as sole finder of fact, demonstrated that Appellant not only provoked the confrontation at issue but also had no reason to believe such extreme force was necessary for his own protection against Mr. Roman. "[F]orce may be met with force so long as it is only force enough to repel the attack." **Steele**, 234 A.3d at 847 (quoting **Commonwealth v. Pollino**, 467 A.2d 1298, 1300 (Pa. 1983)). Mr. Roman presented no threat of attack justifying the extreme final salvo he received, as he had already been beaten into submission by the group attack initiated by Appellant.

Discerning no reason to disturb the jury's assessment of the evidence in this regard, we conclude that the Commonwealth disproved beyond a reasonable doubt Appellant's claim of self-defense.

In Appellant's remaining issue, he contends the evidence failed to show that his acts demonstrated an "attempt[ ] to cause serious bodily injury to another … under circumstances manifesting extreme indifference to the value

of human life." 18 Pa.C.S.A. § 2702(a)(1); *Galindes*, 786 A.2d at 1012. We disagree.

"The intent to cause serious bodily harm may be shown by circumstances surrounding the incident." *Commonwealth v. Caterino,* 678 A.2d 389, 391 (Pa. Super. 1996). *See also Commonwealth v. Glover,* 449 A.2d 662, 665–66 (Pa. Super. 1982) (holding a jury could infer intent to cause serious bodily injury where a group of three people hit a relatively smaller-sized victim in the head and kicked him); *Commonwealth v. Rodriquez*, 673 A.2d 962, 965–67 (Pa. Super. 1996) (same). Moreover, repeatedly punching a person in the face and stomping on his head while he is on the ground all but guarantees the person will experience a serious bodily injury. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa. 2006) (noting a fact-finder is justified in finding intent based upon the intent suggested by the conduct).

As described above, Appellant drew Mr. Roman into a group attack which culminated with Appellant, on his own, beating a helpless Roman to the ground with blows to the face and relentlessly stomping on the unconscious man's head afterward, with only Officer Foose's forcible intervention preventing Appellant's continued onslaught. According to the officers, Roman lay motionless in a pool of his own blood so copious that they were surprised to discover he was still alive.

These facts show Appellant caused or intended to cause serious injury to Roman. Indeed, Roman sustained serious injuries from this beating,

- 12 -

including a concussion, a blood clot in his eye, a fractured jaw that continues to cause pain when he bites down hard, a broken nose that requires further surgery, and lingering problems with his balance that has prevented him from participating in activities with his children. Accordingly, we deem Appellant's claim meritless, and hold the evidence was sufficient to sustain Appellant's conviction for aggravated assault.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/15/2021