J-A25012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER ALLEN STEELE | : | |
| | : | |
| Appellant | : | No. 19 WDA 2021 |

Appeal from the PCRA Order Entered December 3, 2020,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s):  CP-25-CR-0001105-2018.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:         **FILED: DECEMBER 21, 2021**

Christopher Allen Steele appeals from the order denying his first petition

for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§

9541-46.  We affirm.

This Court previously summarized in detail the pertinent facts and trial

testimony as follows:

> The record reflects that on March 27, 2018, [Steele] drove his truck from his place of business to 23rd and Brandes Streets in Erie, Pennsylvania.  Lydia Vicario, [Steele's] close friend and employee, accompanied [Steele] as a passenger in his truck.  [Steele] exited the truck at 23rd and Brandes and approached a red Nissan Sentra, while Vicario remained seated in the truck.  Several minutes later, [Steele] returned to the truck and stated angrily that he had been robbed while selling drugs to the Sentra's occupants.

---

[*] Retired Senior Judge assigned to the Superior Court.

The Sentra drove away, and [Steele] sped after it. As [Steele's] truck drew closer, he began shooting at the Sentra, with a firearm from the driver's side window. Prior to trial, Vicario told police that "she had been shot at," and that [Steele] had "fir[ed] back to protect her." During trial, however, the Commonwealth asked Vicario whether anyone shot at her. Vicario answered, "That day I did believe that there was something else that happened, but I feel like there was just so much commotion, I don't believe nobody else was shooting." Vicario added that she was not close enough to the Sentra to see if any weapons were inside that vehicle. The trial court asked, "Let me be clear. You're chasing the other vehicle, though. It's not chasing your vehicle, right?" Vicario answered, "Yeah."

Several blocks after shooting at the Sentra, [Steele] rammed into it with his truck. The Sentra lost control and crashed into a car (or cars) parked on the street. A Mitsubishi Mirage was destroyed, and a Dodge Neon suffered damage.

[Steele] drove away from the crash scene. According to Vicario, [Steele] drove away from the scene of the collision and asked her to drive. At some point after asking her to drive, [Steele] turned on a police scanner app on his iPhone in an attempt to avoid detection by the police.

Neither [Steele] nor Vicario called 911. Forty-five minutes after the crash, Sergeant Onderko of the Erie Police stopped [Steele's] truck. As the sergeant placed [Steele] in handcuffs, he heard his own voice coming out of [Steele's] pocket. He removed an iPhone from [Steele's] pocket and saw the main screen running a police scanner into Erie police agencies.

Sergeant Onderko found a .22 caliber Smith & Wesson M&P model firearm partially underneath the passenger seat whose barrel was still warm and whose magazine was empty, indicating that all bullets in the magazine had been fired. Sergeant Onderko testified that, based on his experience, he knew that firearm barrels remain warm after being used repeatedly. He also found shell casings, ammunition cartridges and nine baggies of marijuana elsewhere in the passenger compartment. The police discovered gunshot residue on [Steele's] person but did not

find any weapons in the Sentra or any gunshot residue on the Sentra's occupants.

[Steele] testified in his own defense. He claimed that someone in the Sentra robbed him at 23rd and Brandes Streets, but as he left that location in his truck, he came upon a second, independent robbery occurring nearby. The participants in the second robbery decided to terminate that robbery and chase him at high speed in a silver minivan. The Sentra blocked [Steele's] escape from the silver minivan, so [Steele] shot at the Sentra to get it out of his way, either by shooting out its tires or shooting its occupants.

*Commonwealth v. Steele*, 234 A.3d 840, 843-44 (Pa. Super. 2020) (citations and footnotes omitted).

At the conclusion of a three-day trial, a jury convicted Steele of multiple crimes, including criminal use of a communication facility based upon Steele's use of his iPhone to play the police scanner. On December 18, 2018, the trial court imposed an aggregate sentence of 66 to 144 months, followed by a ten-year probationary term. The trial court denied Steele's motion for reconsideration of sentence.

Although he did not file a timely appeal, Steele's appellate rights were reinstated via a PCRA petition. In his direct appeal, Steele challenged the sufficiency of the evidence supporting most of his convictions. In a published opinion filed on July 6, 2020, we agreed that the Commonwealth presented insufficient evidence to support Steele's criminal use of a communication facility. *Steele*, 234 A.3d at 848. Thus, we affirmed Steele's other convictions, but we vacated Steele's judgment of sentence for this one conviction and remanded for resentencing. *Id.* Given this directive, on

August 18, 2020, the trial court resentenced Steele to an aggregate term of 60 to 144 months of incarceration, followed by a three-year probationary term.

On August 31, 2020, Steele filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed a supplement to the *pro se* petition. On October 20, 2020, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Steele's PCRA petition without a hearing. Steele did not file a response. By order entered December 3, 2020, the PCRA court denied Steele's petition. This timely appeal followed. Both Steele and the PCRA court have complied with Pa.R.A.P. 1925.

Steele raises the following issue on appeal:

> A. Whether the [PCRA court] abused its discretion in failing to find that [Steele] was deprived of the benefit of the bargain relating to the plea agreement secured at the magisterial level in that the Commonwealth ultimately failed to afford him with the opportunity to accept those terms in entering formal guilty pleas before the trial court, which prejudice was permitted due to the ineffectiveness of [trial] counsel for failing to seek to enforce the terms of the plea agreement?

Steele's Brief at 2.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

- 4 -

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

Moreover,

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Steele's issue alleges the ineffective assistance of trial counsel for failing to seek the enforcement of a plea agreement that was allegedly reached at the magisterial level. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no

reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

Initially, we note that a PCRA petitioner claiming he received the ineffective assistance of counsel must allege sufficient facts from which a court can determine counsel's effectiveness. Pa.R.Crim.P. 902(A)(12); *see Commonwealth v. Pettus*, 424 A.2d 1332 (Pa. 1981) (stating that a defendant may not argue ineffectiveness in vacuum). Here, although Steele raises an ineffectiveness claim, he neither cites nor argues the three-prong test necessary to establish ineffectiveness of counsel. We could affirm the order denying Steele post-conviction relief on this basis alone. *See generally*, *Commonwealth v. Epps*, 240 A.3d 640 (Pa. Super. 2020).

Nevertheless, we note the PCRA court found no merit to Steele's ineffectiveness claim because Steele never intended to enter a guilty plea. As it explained in its Rule 907 Notice:

> At the time of his scheduled guilty plea, [Steele] decided not to enter a plea. Thus, any negotiated plea agreed to by the parties at the preliminary hearing was withdrawn. It was ultimately [Steele's] decision whether or not to enter a plea in this case and his choosing to not do so was not the result of ineffective assistance of counsel or a violation of his constitutional rights. At the time of his plea [Steele] stated:
>
> [Steele]: I guess I'm going to have to plead guilty.
>
> The Court: No, you don't have to plead anything.
>
> [Steele]: I mean, I should be pleading not guilty, I really should, because that is not what happened.
>
> [N.T., 10/8/15, at 8-9].

Rule 907 Notice, 10/20/21, at 1.

Our review of the record supports the PCRA court's conclusions. At the scheduled plea hearing, the Commonwealth put forth the plea agreement as requiring Steele to enter a guilty plea to three counts of the information in return the Commonwealth recommending at sentencing that the trial court sentence Steele to five years of probation. N.T., 10/8/18, at 6. While Steele did "balk" at the entry of a guilty plea, Steele's Brief at 7, it was because he did not agree with its factual basis—no mention was made of the previous plea agreement.

Moreover, the "plea agreement" to which Steele refers was made between the Commonwealth, "by and through the Erie Police Department," and Steele and provided that they "agreed upon the resolution of this case" as follows:

> [Steele] waives Communication Facility, PIC & M2 REAP w/ Deadly Weapon used enhancement. No plea, all charges reinstated. [Commonwealth] agrees to unsecured bond. [Steele] responsible for restitution to accident victims.

Plea Agreement, 4/11/2018, at 1. This agreement was signed by Steele and the Affiant in the case. The agreement further provided that if Steele failed "to enter the plea within ten (10) days of arraignment without the written consent of the Commonwealth, [Steele] shall be considered to have breached the terms of the instant plea agreement" and the Commonwealth could amend the criminal information in order to reinstate all original charges." *Id.* at 2 (excess capitalization omitted).

Steele did not enter a guilty plea in accordance with this agreement before the magisterial district judge. Indeed, as noted by the Commonwealth, the magisterial district judge had no jurisdiction to accept a guilty plea to a second-degree misdemeanor. *See* 42 Pa.C.S.A. § 1515(a)(6)(i) (providing that a magisterial district judge has jurisdiction over offenses under the Crimes Code "classified as misdemeanors of the third degree"). Thus, while the agreement at issue may have waived a preliminary hearing as to certain offenses with which Steele was charged and contemplated a plea to those charges thereafter, it did not constitute a binding plea agreement as to all charges.[1]

In sum, because our review of the record supports the PCRA court's conclusion that Steele's ineffective assistance claim is without merit, we affirm the PCRA court's order denying him post-conviction relief.

Order affirmed.

---

[1] The certified record includes a December 3, 2018, letter to Steele from trial counsel in which trial counsel explains that "there is no transcript of the preliminary hearing as you did not have a preliminary hearing. At no point did the District Attorney's office ever offer you to plea to no felonies."

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/21/2021