J-A29043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH LEE LAMPENFELD | : | |
| | : | |
| Appellant | : | No. 467 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 2, 2025
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002062-2023

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  January 21, 2026**

Appellant, Kenneth Lee Lampenfeld, appeals from the judgment of sentence of 5-15 years of imprisonment, imposed after a jury convicted him of endangering the welfare of children ("EWOC"), 18 Pa.C.S. § 4304(a), and recklessly endangering another person ("REAP"), 18 Pa.C.S. § 2705.  After careful review, we affirm.

The trial court recounted the facts and procedural history of this case, as follows:

> [The minor victim, ]B.W.[,] was a fifteen-month old at the time of the incident.  B.W.'s [m]other[, S.S. ("Mother"),] and her boyfriend[, Appellant,] transported B.W. to the emergency department ("E.D.") at UPMC Altoona and reported B.W. had a seizure and was presenting periods of unconsciousness.  B.W. was stabilized while a number of tests were performed.  It was determined that B.W. had ingested methamphetamine.
>
> The attending physician, Dr. Adam Blescia…, approached Mother to communicate the urine test showed positive results for methamphetamine.  [Appellant] became irate and condemned the

results[] as erroneous. He also questioned Dr. Blescia's expertise. [Appellant] threaten[ed] to take B.W. out of the hospital, which concerned the medical personnel[,] as it had been determined the best course of action was to fly B.W. to the Children's Hospital in Pittsburgh. Also, Sarah Grigg[,] R.N.…, one of the attending registered nurses, tried to interview Mother, but [Appellant] interjected every attempt Mother made to answer Ms. Grigg's questions. The medical staff was under the impression that [Appellant] was B.W.'s father[,] so they initially tolerated his behavior. Since [Appellant] was cutting off Mother's responses and controlling the conversation, Ms. Grigg requested [Appellant] to step outside, which further infuriated [Appellant]. The UPMC Altoona police [were] summoned and escorted [Appellant] outside of the hospital premises. [Appellant's] behavior seemed atypical to Ms. Grigg, who at [that] moment believed Mother was being somehow influenced by [Appellant]. Ms. Grigg informed Mother that B.W. was going to be flown to UPMC Children's Hospital of Pittsburgh. Ultimately, the weather jeopardized the flight and B.W. was taken to Pittsburgh in an ambulance.

In addition to seeking assistance from hospital police, they reported the incident to the Altoona Police Department. The UPMC Altoona staff also reported the incident to ChildLine.

Officer Stephen Fox of the Altoona Police Department arrived and spoke with Ms. Grigg. He asked her whether the result could be a false positive for methamphetamine. Ms. Grigg explained to Officer Fox that B.W. was not being treated with any medication[,] nor did she have any prior medical diagnosis and[,] thus[,] a false positive would be unlikely.

Officer Fox interviewed Mother at B.W.'s bedside. Mother denied any use or abuse of drugs both on her and [Appellant's] behalf. She related that she was married to [D.W.], B.W.'s [f]ather, but they had separated a month before and she was living with B.W. at [Appellant's] residence. She related that B.W. was playing in [Appellant's] living room when B.W. got into [Appellant's] papers, began to cry, and entered into a seizure. [Appellant] stated he could get B.W. to the hospital before an ambulance arrived, and that's how they got to the E.D.

Based upon Officer Fox's observations of … Mother, he indicated that Mother's gaze was wandering as he inquired how B.W. could have come into contact with methamphetamine. Mother eventually came up with an explanation that some friend of

[Appellant] had watched B.W. and implicated this friend. When asked the name of the friend, Mother began scrolling on her phone and replied, "Dan." Officer Fox confronted Mother, but Mother turned to her phone and remained speechless.

Brandon Pfahler…, the Blair County CYF Caseworker, entered the room and introduce[d] himself to Mother, explaining his role. Mother once again denied use of [m]ethamphetamines. Mr. Pfahler then produced a drug test and requested that Mother take it to rule her out as a potential source of B.W.'s methamphetamine ingestion. Mother declined, stating that she preferred not to undergo the test. In response, Mr. Pfahler warned her that any dishonesty would only further complicate the situation, at which point Mother recounted the following details: Mother and [Appellant] were romantically involved in a month-long relationship. [Appellant] struggles with methamphetamine use and has pressured [M]other into using it as well. Mother admitted that she last used the drug a few days prior to the incident. She further said [Appellant] has two friends, Daniel Sabo … and Ashley Growden…, who stay in a room of the residence. They come and go from the residence, often bringing methamphetamine with them and supplying it to [Appellant]. [Appellant] uses the methamphetamine in the living room while Sabo and Growden use it in their room. [Appellant] normally places the meth[amphetamine] on a red plate before ingesting it but has since switched to a leaf-shaped plate.

On multiple occasions, Mother discovered the plate in the living room containing the controlled substance. She would routinely pick it up and put it away from B.W.'s reach. However, she eventually ceased doing so, as [Appellant], upon witnessing her actions, would peer pressure her into using methamphetamine. Out of fear of being pressured, Mother made the conscious decision to stop handling [Appellant's] plate of methamphetamine. On that particular day, B.W. was playing in the living room, got into papers, and had seizures. She further reported that once [Appellant] was taken out of the E.D., he called and texted Mother and directed her to fabricate a false account, placing the blame entirely on … Sabo. Mother also confirmed that B.W. was not on any medications and had no prior medical diagnosis.

- 3 -

Mother was taken to the Altoona Police Department and provided a **_Mirandized_**[1] statement narrating the aforementioned facts. [Appellant's] residence was secured while police applied for a search warrant. However, [Appellant] had already returned to his residence with the opportunity to clean up the crime scene. [Appellant] was also taken to the police department where he gave a statement after being read the **_Miranda_** [w]arnings. [Appellant] persisted in a false narrative, further embellishing and distorting the details to shift blame away from himself.

The search warrant was served on [Appellant's] residence, which resulted in the discovery of the leaf-shaped plate containing methamphetamine residue in the living room, along with syringes, a spoon, and blue zip[-]top bags in the bedroom Sabo and Growden used.

Mother and [Appellant] were charged with Count 1: [EWOC] (F1) and Count 2: [REAP] (M2). [Appellant] proceeded to trial and the jury returned verdicts of guilty on both counts. …

On March 6, 2025, [Appellant] was sentenced as follows: At Count 1, to pay a fine of $500 and to undergo a period of incarceration of not less than five (5) years nor more than fifteen (15) years; at Count 2, to pay a fine of $250 dollars and undergo one year of reentry pursuant to 61 Pa.C.S.[] § 6137.2 to run consecutively to [C]ount 1. [Appellant] was ineligible for [Recidivism Risk Reduction Incentive ("RRRI")].

On March 13, 2025, [Appellant], by and through his new counsel, filed timely post-sentence motions….

On April 2, 2025, the [c]ourt amended the sentence to the extent that no further sentence was imposed at [C]ount [2], although the year of reentry under 61 Pa.C.S.[] § 6137.2 formerly imposed on [C]ount [2] was imposed at [C]ount [1,] consecutive to the five (5) to fifteen (15) years of incarceration. [In all other respects, the trial court denied Appellant's post-sentence motions.] The instant notice of appeal was filed on April 14, 2025. Therefore, the [c]ourt issued a [Pa.R.A.P.] 1925(b) [o]rder. [Appellant] filed a [c]oncise [s]tatement of [m]atters [c]omplained of on [a]ppeal on May 1, 2025, raising one issue on appeal…. [The trial court subsequently issued a Rule 1925(a) opinion.]

---

[1] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

Trial Court Opinion, 6/6/25, at 2-8 (some footnotes omitted).

On appeal, Appellant raises the following issue for our review:

Whether the verdict was against the weight of the evidence in light of the fact that [Appellant] was not proven to be a guardian, parent, or another individual responsible for the care and custody of the minor child.

Appellant's Brief at 4.[2]

With respect to his conviction for EWOC, Appellant argues that "the verdict was against the weight of the evidence in that the Commonwealth failed to present sufficient evidence to show that … Appellant was a person who was either a 'parent, guardian, or other person supervising the welfare of a child under 18 years of age[.'"] *Id.* at 9 (referencing 18 Pa.C.S. § 4304(a)(1) (defining EWOC as: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support")). Appellant argues that he was not B.W.'s parent or guardian, and that "there was no testimony presented that … Appellant was a person supervising the welfare of" B.W. *Id.* at 12; *see also id.* at 9, 11-12. Specifically, he contends that there was no evidence presented that he was supervising B.W. at the time of the alleged ingestion of methamphetamines and that, on the day that B.W. ingested these drugs, B.W. was under the

---

[2] Appellant stated the same issue in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b) Statement, 5/1/25.

supervision of Mother, who was present in the home that entire day. ***See id.*** at 9-10, 14-15. As such, Appellant claims that "the Commonwealth failed to show beyond a reasonable doubt that … Appellant was a person supervising the welfare of a child under 18 years of age during the time that the minor child ingested the methamphetamines." ***Id.*** at 11.

Initially, we note that Appellant has conflated challenges to the sufficiency and weight of the evidence by arguing that the verdict was against the weight of the evidence because the Commonwealth failed to prove an element of the offense. Our Supreme Court has explained:

> The distinction between [a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence] is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A

new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (cleaned up).

Here, Appellant is not conceding that the evidence was sufficient to sustain the verdict; instead, he is arguing that the Commonwealth failed to prove an element of the EWOC offense, *i.e.*, that he was "[a] parent, guardian or other person supervising the welfare of a child[,]" 18 Pa.C.S. § 4304(a)(1). Accordingly, although Appellant states that he is challenging the weight of the evidence, the substance of his argument goes to the sufficiency of the evidence. Thus, we deem his weight-of-the-evidence claim waived, as he did not develop an argument challenging the weight of the evidence on appeal. *See Commonwealth v. Snyder*, 870 A.2d 336, 342 (Pa. Super. 2005) ("Undeveloped claims are waived.") (citation omitted).

Insofar as Appellant challenges the sufficiency of the evidence, no relief is due. Again, we acknowledge that,

[w]hen reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the

evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa. Super. 2020) (cleaned up).

The relevant statute, Section 4304(a), provides, in pertinent part:

**(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

***

(3) As used in this subsection, the term "**person supervising the welfare of a child**" means a person other than a parent or guardian that provides care, education, training or control of a child.

18 Pa.C.S. § 4304(a)(1), (3) (emphasis in original).

This Court has explained that the determination of whether a person was supervising the welfare of a child "is a factual one, which should be decided on a case-by-case basis." *Commonwealth v. Brown*, 721 A.2d 1105, 1108 n.6 (Pa. Super. 1998). We stated that, "[w]hile we find that, as a matter of law, adult persons voluntarily residing with a minor child are not automatically outside the scope of the endangering statute, proof that such adults were actually supervising a child requires evidence that the adult was involved with the child." *Id.* We elaborated that, for example, "[b]y showing that the adult played with the child, bathed the child, ate with the child, babysat the child, or otherwise interacted with the child, the prosecution can

- 8 -

prove that the adult was supervising the child during the time he resided with the child." ***Id.*** ***See also id.*** at 1106, 1108 (finding the evidence sufficient to support an EWOC conviction where the appellant invited a friend and her infant son to move into his two-bedroom apartment with him; the appellant periodically babysat, changed diapers, and played with the son; and the appellant observed his friend abuse her son in the apartment).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner in accordance with our standard of review, ***see Steele***, ***supra***, the record supports the conclusion that Appellant was a person supervising the welfare of B.W.[3]  Mother testified that Appellant was her boyfriend at the time of the incident.  N.T., 10/15/24, at 118.  Mother relayed that she and B.W. moved in with Appellant.  ***Id.*** at 119.  Mother stated that she, Appellant, and B.W. would all sleep together in the downstairs bedroom, and would spend time together in the living room.  ***See id.*** at 120-21, 123.  Mother relayed that Appellant helped her supervise B.W., and agreed that he watched B.W. when Mother went to the restroom or took a phone call.  ***Id.*** at 125-26.  Mother conveyed that Appellant would feed B.W. daily, correct B.W.

_____

[3] In conducting our review, we note that Commonwealth Exhibits 1, 2, 5, 8, and 11 — which appear to be PowerPoint slides — were not transmitted to this Court.  Although it is Appellant's obligation to make sure the record forwarded to the appellate court is complete, our review of his issue is not hampered by the lack of these exhibits, and we are able to evaluate Appellant's sufficiency argument without them.  ***See Commonwealth v. Manley***, 985 A.2d 256, 263 (Pa. Super. 2009) ("[I]t is the obligation of the [a]ppellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal.") (cleaned up).

if B.W. did something she was not supposed to, and would take Mother and B.W. to places like the store and the park. *Id.* at 126-27. Mother agreed that Appellant and B.W. "got close[,]" and said that Appellant "thought of [B.W.] as [a] stepdaughter." *Id.* at 127. Mother affirmed that she and Appellant were "planning a future together" when the incident occurred, and that they "were making some pretty serious life decisions at that time together[.]" *Id.* at 170.

Moreover, on the day of the incident when B.W. began having seizures, Mother said Appellant had just stepped out of the living room to take a phone call. *Id.* at 170-71. After B.W. started shaking, Mother stated that she called for Appellant, and he came over and "put his finger in [B.W.'s] mouth so she wouldn't bite her tongue." *Id.* at 135. Once at the hospital, Ms. Grigg, the nurse, indicated that Appellant spoke to the physician and Ms. Grigg "thought he was the dad." *Id.* at 210; *see also id.* at 213-14 ("[T]wo adults came in with a child and [Appellant] was doing a lot of the talking for the circumstances[,] so it was just … the assumption … that he was [the] dad."). Ms. Grigg recalled that Appellant threatened to take B.W. out of the hospital's care. *Id.* at 211. Further, Appellant told the police that *he* had a babysitter watch B.W., and he assumed B.W. may have gotten methamphetamine in her system through the babysitter. *See* N.T., 10/16/24, at 84-85.[4] Based on the

_____

[4] There is a trial transcript for each day of the two-day trial. Confusingly, both of the two trial transcripts are dated October 15, 2024. However, we believe the transcript from the second day of trial should be dated October 16, 2024, and use this date.

foregoing, the record supports that Appellant "provide[d] care, education, training or control of" B.W.  **See** 18 Pa.C.S. § 4304(a)(3).

To the extent Appellant argues that B.W. was under the supervision of Mother when B.W. ingested the methamphetamine, such that his conviction for EWOC cannot be sustained, we reject this contention.  Appellant's argument assumes that only one person could supervise the welfare of B.W. at a time; however, Appellant provides no convincing legal authority for this proposition.  The only case Appellant proffers in support is **Commonwealth v. Halye**, 719 A.2d 763 (Pa. Super. 1998).  In **Halye**, this Court determined that the evidence was insufficient to sustain a conviction for EWOC where the appellant was a visitor in the child's home, the child's parents were home and supervising their children, and "[n]o testimony was presented to indicate that [the a]ppellant was asked to supervise the children or that such a role was expected of him."  **Id.** at 765.  In contrast, here, the Commonwealth presented evidence demonstrating that Appellant was a person supervising the welfare of B.W. at the time of the incident, as he lived with B.W. and Mother, viewed B.W. as a stepdaughter, took part in activities with B.W., such as eating, co-sleeping, and correcting B.W.'s behavior, and spoke with medical personnel on her behalf at the hospital.  Accordingly, Appellant's sufficiency challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  1/21/2026