J-A25044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN A. BABOOLAL | : | |
| | : | |
| Appellant | : | No. 344 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 16, 2023
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0003084-2021

BEFORE:  OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:           **FILED SEPTEMBER 3, 2025**

Martin Anthony Baboolal ("Baboolal") appeals from the judgment of sentence following his convictions for drug delivery resulting in death ("DDRD") and related offenses.[1]  Based on our standard of review, we conclude the evidence was sufficient to sustain Baboolal's conviction for DDRD, and that Baboolal's remaining evidentiary and Rule 600 issues are either waived or meritless.  Consequently, we affirm.

The trial court set forth the factual history as follows:

> [T]ext messages regarding a drug transaction were exchanged between [Baboolal] and [] Antonucci [alternatively ("the victim")] in the early morning of his death.  Cell phone GPS data on [] Antonucci's cell phone . . . placed him at or near [Baboolal's] home, for a very short period of time, soon after the messages were exchanged.  The number with which [] Antonucci was texting was [Baboolal's] Voice Over Internet Protocol number that was registered to two e-mail addresses that were determined

_____

[1] *See* 18 Pa.C.S.A. § 2506.

to be [Baboolal's]. Similarly, it was determined that the specific text messages [] Antonucci received came from an IP address registered to [Baboolal's] girlfriend with whom he lived at the time, and the parties stipulated that [Baboolal's] girlfriend was not home at the time the messages were sent. Further, [the victim] was a heroin addict who had struggled with his addiction for many years[, although largely concealing it from his relatives]. [Baboolal] was aware of [] Antonucci's addiction. In fact, when interviewed, [Baboolal] told [the Pennsylvania State Police] that he knew [] Antonucci, that they were close friends, that [] Antonucci would sometimes stop by [Baboolal's] home to visit him, and that [] Antonucci was a heroin addict. [] Antonucci [later] returned home [to his parents' house from his girlfriend's residence,] after his travels to [Baboolal's] residence. [Antonucci] was later found dead on the floor in his bedroom. . . ..

Trial Ct. Op., 4/12/24, at 20 (internal citations to the record omitted).

After the drug deal between Baboolal and Antonucci, which occurred at approximately 6:30 a.m., Antonucci returned to his girlfriend's home, after which she left for work and he went to his parents' house. Antonucci's sister, Nicole Antonucci ("Nicole"), had seen him around the house around 9 a.m. and noon, and she heard him speaking with someone using a speaker around 2:00 p.m. She did not observe signs of drug impairment in her brother before she left the house at around 3:40 p.m. to go to work. Antonucci's mother found him dead around 6:20 p.m. Paramedic Susan Kulick ("Ms. Kulick") responded to the scene around 6:55 p.m., and observed "lividity," *i.e.* pooling of the blood in the body after the heart stops beating and circulating blood. According to Ms. Kulick, lividity can take a "couple of hours" to set in.

The trial court set forth the remainder of the factual history as follows:

Drug residue, drug paraphernalia, including multiple empty glassine packets and hypodermic syringes, and[] Antonucci's cell

phone – the phone that revealed the messages exchanged with [Baboolal] – were found around his body. . . . [H]eroin and fentanyl and its metabolites – the drugs that caused [Antonucci's] death – were found in his blood.

Trial Ct. Op., 4/12/24, at 20 (citations to the record omitted).

In September 2021, Baboolal was arrested and charged with DDRD and related offenses as a result of this incident. Baboolal also faced criminal charges at several other dockets. He filed a Rule 600 motion in August 2022, requesting dismissal of the charges in unrelated cases; in this case, he sought nominal bail. *See* Rule 600 Mot., 8/5/22, at ¶¶ 8-9. The trial court denied the bail motion in May 2023. *See* Order, 5/17/23.[2] Prior to trial, Baboolal orally "renewed" a Rule 600 motion to dismiss in this case, which the trial court denied. *See* N.T., 7/5/23, at 4-9.

Following trial, a jury convicted Baboolal of, *inter alia*, DDRD. Baboolal received an aggregate sentence of seven to fourteen years of incarceration, to be served consecutively to his convictions in the unrelated cases. *See* Order – Sentencing, 8/16/23. Baboolal filed a post-sentence motion, which the trial court denied, and he then filed a timely appeal. Both Baboolal and the trial court complied with Pa.R.A.P. 1925.

Baboolal raises the following issues for our review:

1. Did the trial court err and abuse its discretion by sending to the jury the charge of [DDRD] where the evidence showed that any possible contact between Baboolal and the victim was twelve [] hours before his death[,] and the Commonwealth's own expert

_____

[2] The order is dated May 16, 2022, but docketed May 17, 2023.

testified that an addict would use a controlled substance immediately rather than wait hours to try it?

2. Did the trial court err and abuse its discretion by allowing a Commonwealth witness to testify regarding internet/IP addresses and other matters where it would have been appropriate to have an expert provide such information?

3. Did the trial court err and abuse its discretion by not dismissing this case pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure prior to trial?

Baboolal's Br. at 8-9 (unnecessary capitalization omitted).

In his first issue, Baboolal argues the evidence was insufficient to sustain his conviction for DDRD because, he maintains, even if he sold drugs to Antonucci, the delivery occurred in the morning, yet Antonucci died later in the afternoon. *See* Baboolal's Br. at 19-20. It is thus apparent that Baboolal's sufficiency issue turns on causation.[3] To review the sufficiency of the evidence, this Court assesses:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not

---

[3] Indeed, Baboolal was charged and convicted of possession of a controlled substance with intent to deliver ("PWID") based on his delivery to Antonucci of heroin/fentanyl. *See* 35 P.S. § 780-113(a)(30); Criminal Information, 2/11/22 (charging Baboolal with PWID); N.T., 7/10/23, at 80 (trial court's jury instruction for PWID in which the court explained that the controlled substance(s) the jury must find Baboolal delivered to Antonucci were heroin and/or fentanyl); N.T., 7/11/23, at 12-13 (jury finding Baboolal guilty of PWID). Baboolal does not challenge the sufficiency of the evidence for his PWID conviction. Thus, Baboolal's delivery of drugs to Antonucci is not at issue in this appeal. *Accord* Trial Ct. Op., 4/12/24, at 19 (observing that Baboolal does not contest the PWID conviction arising from his delivery of heroin and/or fentanyl to Antonucci).

weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (internal citations omitted).

A person commits DDRD where he "intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance . . ., and another person dies as a result of using the substance." 18 Pa.C.S.A. § 2506. "The crime of DDRD "consists of two principal elements: (i) intentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by (resulting from) the use of that drug." *Burton*, 234 A.3d at 830 (internal citations, quotations, and brackets omitted).[4] As this Court has explained, the DDRD statute requires but-for causation such that the defendant's action with the drugs was a direct and substantial factor in

_____

[4] To commit DDRD, a person must intentionally act to provide contraband; and the victim's death must be the result of the defendant's reckless disregard of death from the use of the contraband. *See Burton*, 234 A.3d at 830.

producing the death even though other factors combined with that conduct to achieve the result, "*so long as the defendant's actions were not so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible*." *See Commonwealth v. Scott*, 325 A.3d 844, 850 (Pa. Super. 2024) (internal citation and quotations omitted) (emphasis added). This Court has further held that a user's death is a foreseeable consequence of selling heroin to him. *See Commonwealth v. Kakhankham*, 132 A.3d 986, 995 (Pa. Super. 2015); *see also Scott*, 325 A.3d at 850 (holding that delivering fentanyl likewise evinces a reckless disregard of death from its use).

Baboolal argues the evidence was insufficient for his DDRD conviction because, even if he sold drugs to the victim, the victim did not die until approximately eleven hours later, and there were intervening periods where the victim's whereabouts were allegedly unknown during which he could have acquired drugs from which he died. *See* Baboolal's Br. at 19. Baboolal does not argue that there is evidence the victim acquired other heroin and fentanyl, but reasons that, as an addict, the victim likely would have consumed the drugs he received from Baboolal shortly after acquiring them, and, therefore, he likely purchased more drugs that actually caused his death.

The trial court considered Baboolal's argument and concluded it is meritless:

> [T]he Commonwealth presented uncontradicted lay and
> expert testimony that heroin and fentanyl and its metabolites

were found in [] Antonucci's blood and that the cause of death was heroin-fentanyl toxicity. . . .

Further, we agree with the Commonwealth that [Baboolal's] assertion . . . that "the evidence showed that any possible contact between Baboolal and the victim was twelve [] hours before his death and the Commonwealth's own expert testified that an addict would use a controlled substance immediately rather than wait hours to try it," is a mischaracterization of, or least is not supported by, the evidence. Regardless, the assertion is more of a challenge to the weight of the evidence than it is to the sufficiency of the evidence and no weight claim was or is asserted.

Trial Ct. Op., 4/12/24, at 19.

Following our review, we conclude Baboolal's argument merits no relief. The crux of Baboolal's argument is that, even if he sold heroin to the victim at around 6:30 in the morning, the victim would have used the drugs in the morning, rather than using and overdosing on them in the afternoon. Accordingly, causation is lacking. *See* Baboolal's Br. at 19.

However, viewed in the light most favorable to the Commonwealth as the verdict winner, the victim's delay in using the drugs does not negate causation.

The Commonwealth's theory of the case was that the victim was embarrassed by his drug addiction and waited until after his sister left for work to use the drugs he procured from Baboolal. *See* N.T., 7/10/23, at 53-54. The victim's mother's and sister's testimony established a basis for the jury to find the victim did not use the drugs immediately. Ms. Antonucci testified that the victim was in a car accident in 2012 after which he became addicted to pain medication and developed a drug habit. *See* N.T., 7/6/23, at 64-65. She

- 7 -

testified he served jail time in 2013, got clean, relapsed, and subsequently went through periods of drug use and sobriety. *See id*. at 66-69. She testified the family did not learn about his heroin use until 2015 when he went to rehab in California, and that after his return, "we didn't know . . . what he was on after that. We never s[aw] him using." *Id*. at 67, 69. Ms. Antonucci testified that the morning of the day he died, the victim looked happy and healthy. *See id*. at 74. Nicole, his sister, testified she knew he had a drug problem but never saw him acting differently. *See* N.T., 7/7/23, at 34.

Nicole did not leave the house until 3:40 p.m. and Ms. Antonucci found the victim dead at around 6:20 p.m. *See* N.T., 7/6/23, at 82. He had a potentially lethal amount of heroin in his body as well as a "definitely" lethal level of fentanyl. *See* N.T., 7/7/23, at 59 (testimony by Dr. Starling-Roney). Ms. Kulick, the paramedic, upon responding to Ms. Antonucci's 911 call at around 6:55 p.m., discovered the victim and immediately noticed he did not have "any signs of life[; h]e was cold to the touch. And had what we call lividity, which is pooling of the blood," which occurs when the heart stops beating and circulating blood. N.T., 7/6/23, at 98-99, 102. Ms. Kulick explained that lividity takes "usually a couple of hours." *Id*. at 102. The record thus reasonably supports the inference that the victim died around 4:55 p.m., which was approximately an hour after Nicole left for work at 3:40 p.m., and is consistent with the Commonwealth's theory that the victim waited until his mother and sister left the house before shooting up.

Baboolal's argument hinges on a review of the evidence in the light most favorable to himself rather than the Commonwealth, which is in contravention to our standard of review. *See Commonwealth v. Risoldi*, 238 A.3d 434, 454 (Pa. Super. 2020). Baboolal asserts Detective Kim Lippincott ("Detective Lippincott") "agreed with [defense] counsel that an addict in need was going to find the drug as quickly as possible and then use it immediately." *See* Baboolal's Brief at 16 (citing N.T., 7/7/23, at 221). The testimony Baboolal cites pertains to Detective Lippincott speaking about the behavior of drug addicts generally. The full context for that statement was as follows:

Q. [A] person who is a go-to [for drugs] would have to be there and be available and be ready whenever you need them.

A. For the most part, yeah.

Q. Because heroin is something that when you need it, you really need it. Is that a fair assessment?

A. Yes.

Q. It's not like I'll get my heroin tomorrow. When you have the need for heroin, you're going to find it.

A. Yes.

Q. And then you're going to use it.

A. Yes. It's a very strong addiction.

N.T., 7/7/21, at 220-21. Detective Lippincott's testimony does not establish— as Baboolal maintains—that the victim must have used the drugs *immediately*, but, rather, that the victim would not purchase heroin and hold onto it to use the next day. That testimony, even if the jury chose to credit

it, did not establish the victim did not buy the drugs to use later that day. The jury was entitled to accept, reject, or give some intermediate amount of weight to Detective Lippincott's testimony. *See Commonwealth v. Minerd*, 753 A.2d 225, 232 (Pa. 2000) (holding that the jury "was able to accept or reject any part of the expert's testimony").

Baboolal speculates the victim may have later obtained additional drugs from some unknown source. However, that speculation had no concrete evidentiary support. *See* N.T., 7/7/23, at 198 (Trooper Jonathan Bailey ("Trooper Bailey") testifying from his review of Antonucci's phone that "there's no evidence of him setting up any other buys, communicating with anybody else, from what I examined on the phone"). Further, the Commonwealth need not preclude every possibility of innocence. *See Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa. Super. 2020).[5] Viewing the evidence, as we must, in the light most favorable to the Commonwealth, it is not so weak and

---

[5] Baboolal argued at trial that there was travel recorded on Antonucci's phone not accounted for in the Commonwealth's theory of the case. In fact, the morning Antonucci died, he had initially stayed over at his girlfriend's house, after which he left to purchase the drugs from Baboolal, returned to his girlfriend's home, and then when she left for work, he went home to his parents' residence. *See* N.T., 7/7/23, at 77-78 (Antonucci's girlfriend indicating he had stayed over at her place the prior evening into the morning he obtained drugs); *id*. at 192 (Trooper Bailey indicating that the travel from Antonucci's girlfriend's residence to his parents' house would account for the missing miles). There is record evidence which accounts for the victim's travels. Again, the jury as fact-finder is entitled to believe all, none, or some of the evidence in the record. *See Burton*, 234 A.3d at 829.

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *See Burton*, 234 A.3d at 829 (setting forth our standard of review). *See also Scott*, 325 A.3d at 850 (providing that the DDRD statute provides for criminal liability where the defendant's action was a direct and substantial factor in producing the death). As such, we conclude Baboolal's challenge to the sufficiency of the evidence merits no relief.

In his second issue, Baboolal argues the trial court erred in permitting a non-expert Commonwealth witness to testify about internet/IP matters.[6] Before reviewing the merits of this issue, we must determine whether Baboolal has preserved it. Issues generally cannot be raised for the first time on appeal and are waived if not raised in the lower court. *See* Pa.R.A.P. 302(a). Additionally, to preserve an issue for appeal, a defendant must make a timely and specific objection. *See Commonwealth v. Sauers*, 159 A.3d 1, 8-9 (Pa. Super. 2017) (requiring a defendant to make a timely and specific objection to evidence before or during trial).

Baboolal's argument concerns the testimony of Commonwealth witness Trooper Bailey about an IP address used to set up a meeting between the victim and Baboolal. *See* Baboolal's Br. at 21-22. Our review of the notes of testimony shows that Trooper Bailey testified how cell phones can connect to Wi-Fi to send and receive phone calls over the internet. *See* N.T., 7/7/23, at

---

[6] Our standard of review for evidentiary rulings is abuse of discretion. *See Commonwealth v. Lawrence*, 313 A.3d 265, 275 (Pa. Super. 2024).

116-17. Trooper Bailey also testified he obtained a search warrant to learn the account number, associated email address, and IP addresses associated with a Google phone number the victim was in contact with the day of his overdose, and that the IP address was traced to the house of Jennifer Bush, whom counsel stipulated was not present at the time and who was associated with Baboolal. *See generally id*. at 118-28. Baboolal did not object to any of this testimony, notwithstanding his present assertion that Trooper Bailey, following his qualification as an expert, "went on to testify about IP addresses, how they are assigned and what they tell about[, which] went well beyond the scope of his testimony, [which was] set after objection [to a broader expert qualification], and, as such, should have been stricken." Baboolal's Br. at 22.

We observe that while Baboolal expressed a concern about the specific field for which Trooper Bailey would be qualified, Baboolal consented to Trooper Bailey's qualification as an expert in the field of "digital retrieval," and he then failed to object to Trooper Bailey's subsequent testimony which he claims, for the first time on appeal, exceeded the subject matter for which he was qualified. Because Baboolal did not lodge a timely and specific objection to Trooper Bailey's testimony, he has waived this issue for our review. *See Sauers*, 159 A.3d at 8-9; *accord* Trial Ct. Op., 4/12/24, at 15 (opining that Baboolal had waived this issue for failure to raise an objection at trial).

In his third and final issue, Baboolal argues the trial court erred in denying his oral Rule 600 motion to dismiss.[7] In evaluating Rule 600 issues, "our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Carl*, 276 A.3d 743, 748 (Pa. Super. 2022). "The proper application of discretion requires adherence to the law, and we exercise plenary review of legal questions." *Commonwealth v. Baird*, 975 A.2d 1113, 1118 (Pa. 2009) (internal citation omitted).

We review challenges to a trial court's ruling on a Rule 600 motion bearing in mind that:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will[,] . . . discretion is abused.

\* \* \* \* \*

---

[7] As noted above, Baboolal filed a written Rule 600 motion seeking **bail** and then orally sought Rule 600 dismissal as a "renewal" of his earlier Rule 600 motion. Accordingly, it appears Baboolal never filed a written motion asserting a Rule 600 violation and seeking dismissal. **Accord** Trial Ct. Op., 4/12/24, at 10-11 (opining that "it is not clear that [Baboolal] ever formally and properly requested dismissal under Rule 600 in this case" because he only filed a written bail motion). We could find this issue waived, because Baboolal was required to file a written Rule 600 motion to dismiss. **See** **Commonwealth v. Brock**, 61 A.3d 1015, 1019 (Pa. 2013). However, the Commonwealth has failed to object, and Baboolal's omission does not impede our review, as we can resolve his issue based on the certified record. Therefore, we consider the merits of Baboolal's issue.

Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

*Commonwealth v. Speed*, 323 A.3d 850, 855 (Pa. Super. 2024) (quoting

*Commonwealth v. Womack*, 315 A.3d 1229, 1237 (Pa. 2024)) (formatting

modified; citations omitted). "[O]ur scope of review is limited to the trial

court's findings and the evidence on the record, viewed in the light most

favorable to the prevailing party." *Womack*, 315 A.3d at 1237 (internal

citation omitted).

Rule 600 mandates, in relevant part, the following:

[**(A)**](2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \* \* \*

**(C) Computation of Time**

(1) For purposes of paragraph (A), *periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time* within which trial must commence. Any other periods of delay shall be excluded from the computation.

\* \* \* \* \*

**(D) Remedies**

- 14 -

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a ***written*** motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(A), (C), (D) (emphasis added).

The Rule 600 analysis thus entails three steps:

First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). As we have explained, Rule 600[] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

***Carl***, 276 A.3d at 749 (emphasis added; internal citation omitted). It is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600. ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010).

Regarding a trial court's delay in scheduling the case for trial, our Supreme Court elucidates,

in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its

- 15 -

obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

*Commonwealth v. Harth*, 252 A.3d 600, 618 (Pa. 2021); *accord Commonwealth v. Lear*, 325 A.3d 552, 562 (Pa. 2024).

Baboolal argues that the trial court abused its discretion in denying his Rule 600 motion. Specifically, Baboolal argues he was arrested in September 2021, and trial did not occur until July 2023, nearly two years later, thus violating his right to a speedy trial under Rule 600. *See* Baboolal's Br. at 23. Baboolal asserts that while there were several delays in his case, he caused few of them. *See id*. at 25.[8]

Based on our review, we conclude Baboolal is due no relief. We note that the criminal complaint shows Baboolal was arrested on September 17, 2021. Jury selection for Baboolal's trial began on July 5, 2023. Thus, his trial occurred on the 657th day after his arrest. However, the magisterial docket sheet shows 70 days of defense continuances from October 7, 2021 through December 16, 2021, reducing the period in question to 587 days. *See* Magisterial District Judge 43-4-02 Docket Transcript at p.1.

Additionally, jury selection was scheduled for June 7, 2022, but Baboolal moved for a continuance, which the trial court granted until September 6,

---

[8] The trial court concluded that by the time Baboolal filed his Rule 600 motion, the mechanical run date had not yet run. *See* Trial Ct. Op., 4/12/24, at 11.

2022. *See* Mot. for Continuance, 6/1/22, at ¶¶ 1, 5; Order, 6/2/22. The period of that continuance is 91 days, which, once excluded from the Rule 600 calculation, leaves 496 days.

Baboolal filed his motion for nominal bail in this case on August 5, 2022. *See* Pet. for Nominal Bail Pursuant to Pennsylvania Rule of Criminal Procedure 600, 8/5/22. The court scheduled a hearing for August 30, 2022, *see* Order, 8/8/22, and then rescheduled the hearing for the preparation of transcripts, the gathering of evidence, and to allow Baboolal to file a memorandum of law. *See* Order – Continuance, 8/30/22. The court scheduled the hearing for October 6, 2022. *See* Order, 8/31/22.[9] Following a conference on October 3, 2022, the court scheduled trial for October 18, 2022, *see* Order, 10/3/22, and by separate order directed that a hearing on Baboolal's bail motion would occur on that same date due to the transcripts having been properly requested but not prepared. *See* Order, 10/6/22. This time—from the scheduled trial date of September 6, 2022, through October 18, 2022, which is 42 days—is excludable as it was due to a defense motion, so long as the Commonwealth proved due diligence. *See*, *e.g.*, *Commonwealth v. Andrews*, 213 A.3d 1004, 1012 (Pa. Super. 2019). Here, Baboolal filed a bail motion, which postponed the trial from September into October; he moved for additional

---

[9] Baboolal moved for additional time to file his legal memorandum/brief on September 29, 2022. *See* Mot. for Additional Time to File Brief, 8/29/22.

time to file a brief in advance of the hearing, and the trial court, in continuing the hearing and the trial, noted the parties had properly requested transcripts that remained unavailable. Accordingly, this time is excludable. This reduces the Rule 600 calculation from 496 days to 454 days.

For reasons not apparent from the record, the trial court next scheduled jury selection for January 10, 2023. *See* Order, 10/18/22. Baboolal moved for a continuance from the January trial term, *see* Mot. for Continuance, 12/29/22, and the trial court granted the motion and scheduled jury selection for February 7, 2023, which renders an additional 28 days excludable, reducing the includable time to 426 days. *See* Order, 1/5/23.

Baboolal again moved for a continuance from the February trial term, and the trial court granted the motion, scheduling trial for April 4, 2023. *See* Order, 2/8/23 (noting a defense continuance request and rescheduling the trial for April 2023). The period from February 8 through April 4, 2023, is 55 days, which reduces in the includable time under Rule 600 to 371 days.

Following a Commonwealth continuance request, which the trial court granted, the trial court scheduled trial for May 16, 2023. *See* Mot. to Continue to Next Term of Court, 4/3/23; *see also* Order of Court, 4/3/23. However, at a scheduling conference, Baboolal and the Commonwealth made a joint request for continuance from the May 2023 trial term to the July 2023 trial term, and scheduled jury selection for July 5, 2023. *See* Order – Status Conference, 4/25/23, at ¶¶ 1, 3. As this Court has held, "[c]ontinuances

based on joint requests by the Commonwealth and the defendant are excludable time . . ..." **Commonwealth v. Reed**, 292 A.3d 601, 611 (Pa. Super. 2023). **Accord Commonwealth v. Dunmore**, 324 A.3d 1, 8 (Pa. Super. 2024) (stating the same). Accordingly, the 50 days from May 16, 2023 to July 5, 2023 is excludable, which lowers the Rule 600 includable time down to 321 days.

Thus, the mechanical run date from September 17, 2021 was September 17, 2022, but there were a total of 336 days of excludable time,[10] which brings the adjusted run date from September 17, 2022 to August 21, 2023.[11] Baboolal was tried on July 5, 2023, within the adjusted run date. Based on the foregoing, Baboolal has failed to show a Rule 600 violation.

Because none of Baboolal's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Dubow joins this decision.

Judge Olson concurs in the result.

_____

[10] As noted above, trial occurred 657 days after Baboolal was charged. The excluded days above total 336. The difference between 657 and 336 is 321.

[11] The adjusted run date falls on August 19, 2023, which is a Saturday. The following Monday is August 21, 2023. **See** 1 Pa.C.S.A. 1908 (excluding weekends from the computation of time periods).

- 19 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/3/2025